**WARNER MANUFACTURING CO., Plaintiff,**

v.

**William D. ARMSTRONG, Joe Lin, and The Forest Group, Inc., Defendants.**

**No. 05–CV–612(PJS/JJG).**

United States District Court, D. Minnesota.

March 30, 2007.

Paul E. Lacy, Lacy Law Office, for plaintiff.

James Richard Mary, Jr., Richard Mary, APLC; and Richard R. Arrett, Vidas Arrett & Steinkraus, for defendants. ·

### MARKMAN ORDER

PATRICK J. SCHILTZ, District Judge.

This matter is before the Court for construction of certain terms found in the claims of U.S. Patent No. 5,645,515 (the '515 patent) in accordance with *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390–91, 116 S.Ct. 1384, 134 L.Ed.2d

577 (1996). The parties prepared a joint *Markman* submission [Docket No. 20], and each side submitted three briefs (opening, response, and supplemental) on claim-construction issues [Docket Nos. 28, 29, 63, 65, 69, and 71]. The Court held a *Markman* hearing on March 20, 2007. Shortly before the hearing, defendants William Armstrong, Joe Lin, and the Forest Group (collectively, "Forest") submitted a supplemental brief attaching and bringing to the Court's attention a *Markman* order by the Honorable Nancy F. Atlas of the United States District Court for the Southern District of Texas construing certain terms of the '515 patent. *Forest Group, Inc. v. Bon Tool Co.*, Civil No. H–05–4127, 2007 U.S. Dist. LEXIS 10487, 2007 WL 541030 (S.D.Tex. Feb.15, 2007).

Both sides spilled a lot of ink not only on claim construction, but also on invalidity and noninfringement. The Court takes this opportunity to remind the parties that *Markman* hearings are for claim construction alone. Noninfringement is *never* relevant to claim construction. Invalidity is sometimes relevant, but only when two constructions are equally plausible. *See* 5A Donald S. Chisum, *Chisum on Patents* § 18.03[2][f][i] (2006). Because competing constructions rarely finish in a "tie," the Court does not expect parties to routinely ask the Court to construe claims to preserve their validity. In this, the Court follows the Federal Circuit, which "ha[s] certainly not endorsed a regime in which validity analysis is a regular component of claim construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed.Cir.2005) (en banc).

### I. BACKGROUND

The '515 patent is an improvement patent related to stilts worn primarily by construction workers. Plaintiff Warner Manufacturing Co. ("Warner") makes such

stilts. Forest informally accused Warner of infringing the '515 patent, and Warner responded by bringing this declaratory-judgment action against Armstrong and Lin (the patentees) and Forest Industries (the patent holder). Warner seeks a declaration of noninfringement, invalidity, or both.

## II. APPLICABLE LAW

■ Courts, not juries, construe patent claims. *Markman*, 517 U.S. at 391, 116 S.Ct. 1384. Language in a particular claim must be construed in the context of both that individual claim and the entire patent, including the specification. *Phillips*, 415 F.3d at 1313. Indeed, the specification, read in light of the prosecution history, is the primary basis for construing patent claims. *Id.* at 1315. Courts may also rely on "extrinsic evidence"—everything other than the patent and its prosecution history—but that evidence is secondary to the intrinsic evidence. *Id.* at 1317.

■ In general, claim language means whatever it would have meant, ordinarily and customarily, to a person of ordinary skill in the art at the time the patent application was filed. *Id.* at 1312–13. In some cases, the ordinary and customary meaning of claim language to a person of ordinary skill in the art may be identical to the meaning that language would have to a lay person who is not skilled in the art. *Id.* at 1314.

## III. CLAIM CONSTRUCTION

The parties originally asked the Court to construe both claims 1 and 2 of the '515 patent. Forest, however, conceded in its *Markman* response brief—and confirmed at the hearing—that it will not allege that the stilt currently marketed by Warner infringes claim 2. Def. Reply Br. at 4. Accordingly, the Court construes only claim 1.

### A. *Undisputed Terms*

The parties largely agree on how the Court should construe many of claim 1's terms. The parties' agreement is reflected in their joint *Markman* statement. Accordingly, the Court construes the undisputed terms consistently with the parties' agreement, as set forth below. The Court has reworded some of the jointly proposed constructions for stylistic, not substantive, purposes.

The Court construes only those terms for which the parties offered a construction in their joint *Markman* statement; the Court finds that the parties have agreed implicitly that any other terms do not need to be construed.

1. The term "floor platform"

The Court construes this term to mean "a surface that rests on the floor."

2. The term "shoe platform"

The Court construes this term to mean "a surface on which the user's foot rests."

3. The phrase "a pair of substantially vertically mounted supports pivotally connecting said floor platform and said shoe platform"

■ The Court construes this phrase to mean:

Two struts that are oriented vertically, connect the floor and shoe platforms, and are attached so that the struts and platforms can pivot at their attachment points.

This construction differs slightly from the construction proposed by the parties. The parties' proposed construction was "there are two struts that go between the floor and the foot." This construction fails to account for the words "pivotally connecting," which the parties instead accounted for in their interpretation of the

subsequent claim language. The Court finds, however, that the words "pivotally connecting" should be construed as part of the phrase in which they appear.

4. The phrase "said vertical supports spring-biased so as to maintain said vertical supports and said platforms in a parallelogram configuration"

■ The Court construes this phrase to mean:

> The struts are connected to one or more springs that (1) offer resistance when the struts lean away from a vertical orientation and (2) exert force that tends to return the struts to a vertical orientation.

This construction is more informative than, but consistent with, both the claim language and the parties' proposed interpretation. It is also consistent with the construction adopted in *Forest Group,* 2007 WL 541030, *3, 2007 U.S. Dist. LEXIS 10487, at *9 (construing this phrase "to mean 'a spring biased against the vertical supports that causes the vertical supports and the platforms to be maintained in a parallelogram configuration.' ").

### B. *Disputed Terms*

The parties' disagreement centers on the terms "resiliently lined yoke" and "capturing bracket." But because Claim 1 also includes language covering the relationship between the "capturing bracket" and a fastener, the Court must construe three separate terms.

The parties have not argued that someone of ordinary skill in the art would interpret any of the disputed language differently than would an educated lay person. Instead, the parties' arguments have focused on the '515 patent itself, its prosecution history, a prior-art patent incorporated by reference in the '515 patent's specification (U.S. Patent No. 3,902,199), and dictionary definitions (mostly from ordinary, non-technical dictionaries).

Wagner provided one expert report to the Court, but that report related primarily to noninfringement, not claim construction, and the expert (a patent lawyer) did not purport to be a person of ordinary skill in the art. Moore Decl. at 2, 5 [Docket No. 52]. With its *Markman* rebuttal brief, Forest offered the Court a declaration by the inventor, William Armstrong, arguably a person skilled in the art. Armstrong Decl. [Docket No. 64]. But much of Armstrong's declaration related to infringement, and the portion related to claim construction (¶¶ 3.a-c & 4) did not add significantly to the argument in Forest's briefs. Nothing in Armstrong's declaration suggested that the claim language should be given some unusual meaning from the perspective of a person of ordinary skill; he did not assert that any of the claim terms had a special technical meaning within the fields of stilt design or mechanical engineering.

Accordingly, the Court construes the disputed terms based on the intrinsic evidence and in light of the ordinary meaning that the claim language would have to an educated lay person. The Court has also carefully considered, and generally agrees with, Judge Atlas's *Markman* ruling with respect to the '515 patent in *Forest Group,* 2007 WL 541030, 2007 U.S. Dist. LEXIS 10487.

1. The term "resiliently lined yoke"

■ The Court construes this term to mean:

> A yoke or clamp lined with a material that is capable of being elastically or reversibly deformed. The lining must be distinct from the yoke or clamp itself, but need not be made of a different material.

This construction is essentially identical to the construction adopted in *Forest Group,* 2007 WL 541030, \**3–4, 2007 U.S. Dist. LEXIS 10487, at \*10–11 ("The Court construes the term 'resiliently lined yoke' to mean 'a yoke or clamp lined with a material that is capable of being elastically or reversibly deformed.' The term requires a lining that is distinct from the yoke itself, but does not require that the lining and the yoke be of different materials.").

Based on the parties' briefs, it appeared to the Court that they agreed on the meaning of "resiliently." Def. Reply Br. at 10 ("There ... is no real dispute as to the definition or meaning of 'resiliently.[']"). At the *Markman* hearing, however, Warner asked the Court to distinguish between three types of resiliency—resiliency with respect to stretching, bending, and compression—and to construe the patent to cover only resiliency with respect to compression. The Court sees no reason to limit the term "resiliency" in this way. The claim language is not so limited, and while compressible foam rubber is the only material identified specifically in the patent, '515 Pat. col. 3:16, that is not sufficient reason to construe "resiliency" narrowly.

The key dispute as to this term is over the word "lined." Forest argues that "resiliently lined" should be broadly construed to cover any yoke with an interior surface that is resilient when compared to the support member clamped within the yoke. The patent could have been drafted this way. It could have said, for instance, "a yoke that is resilient in comparison to the leg-support member." Instead, the patent describes the yoke as "resiliently lined," and nowhere in the patent is the word "lined" given the unusual meaning that Forest advocates.

In short, the patentee did not act as his own lexicographer by defining "lined" either explicitly or implicitly. *See Phillips,* 415 F.3d at 1316 (observing that if the specification "reveal[s] a special definition given to a claim term by the patentee .... the inventor's lexicography governs"). The Court therefore interprets the word "lined" in light of its ordinary meaning, which is the only meaning supported by the patent's specification. In particular, the written description says that the yoke's inner surfaces "are lined with a resilient padding material 70, such as foam rubber." '515 Pat. col. 3:14–15. Moreover, Figure 4 identifies the yoke's lining as a material (item number 70 in Figure 4) separate from the body of the yoke itself.

The Court is conscious of its duty to avoid "one of the cardinal sins of patent law—reading a limitation from the written description into the claims." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1340 (Fed.Cir. 2001). Accordingly, the Court does not construe "resiliently lined" to mean "lined with foam rubber." But a "lining" is ordinarily distinct from the thing lined; one would hardly call the interior (or exterior) surface of a t-shirt its "lining." In adopting its construction of "resiliently lined," the Court believes that it has stayed on the correct side of the "fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed.Cir.1998).

2. The term "capturing bracket"

■ The Court construes this term to mean:

A bracket (1) into which the lower end of the leg support fits and (2) that prevents significant downward or lateral movement of the lower end of the leg support.

This construction is consistent with the construction adopted in *Forest Group,* 2007 WL 541030, \*3, 2007 U.S. Dist. LEX-

IS 10487, at * 10 (construing "capturing bracket" as "a bracket into which the lower end of the leg support may be positionally fixed to prevent movement downward below the bracket or laterally in any direction").

Warner asks for a construction that wrongly disregards the word "capturing." Joint *Markman* Subm. at 3. Forest asks for a construction that wrongly includes language about how the bracket functions when a fastener breaks. *Id.* This particular term, however, has nothing to do with fasteners. The language about fasteners that Forest advocates relates to a limitation expressed in the last sentence of Claim 1, not to this particular term. Accordingly, the Court adopts neither party's proposed construction of the term "capturing bracket."

Instead, the Court construes "capturing bracket" consistently with the patent claims, drawings, and written description, and with the ordinary meaning of the words. The patent drawings depict a U-shaped bracket into which the lower end of the leg support fits.[1] Figs. 1, 2, & 3. The written description states that the leg-support end "is shaped or contoured ... to fit within capturing bracket 48." '515 Pat. col. 3:4–6. The description also states that if the nut-and-bolt assembly connecting the capturing bracket and the leg-support end breaks, "capturing bracket 48 will still hold leg support lower end 46 in place." *Id.* col. 3:11–12. Finally, the ordinary meaning of the word "capture" is to "seize"— that is, to hold in place. *See, e.g., Am. Heritage Dictionary of the English Language* 278 (4th ed.2000). The Court's construction is based on all of this evidence.

3. The phrase "said lower end and said capturing bracket engaged by a fastener so as to remain engaged despite failure of said fastener"

The Court construes this phrase to mean:

> The lower end of the leg support is inserted within the capturing bracket; a fastener connects the lower end and the capturing bracket to each other; and the lower end will remain within the capturing bracket even if the fastener breaks or fails.

This construction is consistent with the construction adopted in *Forest Group,* 2007 WL 54103, *4, 2007 U.S. Dist. LEXIS 10487, at *11 (construing this phrase "to mean that 'the lower end of the leg support and the capturing bracket are engaged by the fastener so that if the fastener fails to perform its function, the lower end of the leg support and the capturing bracket remain in place and the capturing bracket continues to hold the leg support' ").

Warner does not propose any construction for this term, preferring instead to imply that it is somehow nonsensical. Joint *Markman* Subm. at 4. Forest proposes a construction that incorporates a definition of "capturing bracket," *id.,* and Warner apparently does not object to Forest's proposed construction (except to argue that Warner's stilt does not infringe based on that construction). Pl. *Markman* Memo. at 10. But because "capturing bracket" is a separate term, the Court rejects Forest's proposed construction of this phrase, which would effectively re-

---

1. The *Markman* order in *Forest Group* states that, according to the figures in the patent, "the capturing bracket is a small structure that is enclosed on three sides and the bottom." *Forest Group,* 2007 WL 541030, *4, 2007 U.S. Dist. LEXIS 10487, at *10. As the Court reads the figures in the patent, however, the capturing bracket is not necessarily enclosed on the bottom. In particular, Figure 3, a cutaway view of the bracket, has no indication of a plate on the bottom of the capturing bracket. Accordingly, the Court believes that the figures depict a U-shaped bracket.

quire that "capturing bracket" be subject to two different constructions.

This particular phrase, which requires that the capturing bracket still confine the leg support if a fastener fails, was added by the patentee to overcome a rejection by the Patent Office. Pl. *Markman* Memo. Lacy Decl. Exh. D part 5 at 2 [Docket No. 43]. In particular, this limitation was added to distinguish the claimed invention from U.S. Patent No. 3,902,199 to Emmert (the '199 patent), which is incorporated by reference in the '515 patent. '515 Patent col. 1:22–23; Pl. *Markman* Memo. Lacy Decl. Exh. D part 5 at 1–2. Figure 2 of the '199 patent shows a leg support attached to a stilt at the top by a yoke, and at the bottom by a single bolt through the end of the leg support. If the single bolt at the bottom of the leg support broke, the leg support could rotate more-or-less freely about the single point of attachment provided by the yoke or could slide downward through the yoke.

A key purpose of the '515 patent was to improve upon the '199 patent's method of attaching the leg support; that purpose was achieved through this final phrase of claim 1 relating to the capturing bracket, the leg-support end, and the fastener connecting the two. As the patent states, "[t]he lower leg support attachment employing the capturing bracket and the yoke structure serve to prevent the leg support from accidentally becoming detached from the stilt." '515 Pat. col. 1:61–64. By contrast, in prior-art stilts, "the leg support member had a tendency to loosen and become detached from the stilt...." *Id.* col. 1:39–41. With respect to the fastener attaching the leg-support end to the capturing bracket, in particular, "[i]n the event that nut and bolt assembly 6 should come loose or break, capturing bracket 48 will still hold leg support lower end 46 in place." *Id.* col. 3:9–12.

## IV. CONCLUSION

In light of the patent's specification (including the claims), the prosecution history, the purpose of the '515 patent as disclosed in all of this intrinsic evidence, and the ordinary meaning of the claim language, the Court construes the relevant claim language as stated above.